NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT EUGENE TOLLER, *Petitioner/Appellee,*

*v.*

IRYNA M. TOLLER, *Respondent/Appellant.*

No. 1 CA-CV 20-0181 FC
FILED 2-25-2021

Appeal from the Superior Court in Maricopa County
No.  FC 2010-002637
The Honorable Casey J. Newcomb, Judge *Pro Tempore*

**AFFIRMED**

APPEARANCE

Iryna M. Toller, Phoenix
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Peter B. Swann joined.

---

**C A M P B E L L**, Judge:

¶1         Iryna Toller ("Mother") appeals the superior court's modification of child support and denial of her request that Robert Toller ("Father") reimburse her for a portion of the cost for their daughter's extracurricular activities. We affirm.

**BACKGROUND**

¶2         The parties' divorced in 2011. The court awarded the parents equal parenting time and shared decision-making for their daughter. The court also ordered Father to pay $188.25 a month in child support, pursuant to the Arizona Child Support Guidelines. A.R.S § 25-320 app. § 5(C) (2018) ("Guidelines").

¶3         A contentious post-divorce relationship developed between the parents where they continually asked the court to resolve their parenting disputes. For example, Mother sought the court's help with obtaining the child's passport from Father, Father's non-compliance with the court-ordered exchange of financial information, and Father's failure to provide the daughter's health insurance. Mother also filed a Request for Ruling and Request for Assurance from Petitioner Regarding His Not Exposing the Child to Coronavirus.

¶4         In April 2019, Mother petitioned to modify Father's child support obligation and sought reimbursement from Father for their daughter's dance classes. The court set an evidentiary hearing and ordered the parties to exchange information, including their income tax returns for the last two years. Father did not comply; Mother notified the court and requested sanctions. At the August 2019 evidentiary hearing, Father still had not provided the income tax documents and the hearing was continued to September. On September 10, Mother filed a motion for another continuance because Father had not provided the necessary information. The following day, for the second time, Mother requested the

superior court sanction Father for his discovery delays. The court denied Mother's motion. At the evidentiary hearing on September 16, Father still had not provided adequate discovery. The court gave Father until October 18 to respond to Mother's discovery requests and again continued the hearing. Father finally submitted his discovery responses and tax documents; however, he left several interrogatories unanswered. The evidentiary hearing was finally completed at the end of January 2020.

¶5        The superior court determined that Father's total income for 2018 was $12,113. The court also found that Mother earns $14.00–$15.50 an hour at temporary and seasonal jobs. Consequently, the court attributed minimum wage earnings to both parents and reduced Father's child support obligation to $0.00 per month. The court declined to order reimbursement for the child's dance classes. Finally, the court denied mother's motions to sanction Father for his failure to timely disclose information. Mother now appeals.

## DISCUSSION

¶6        We review the superior court's modification of a child support award for an abuse of discretion. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision." *Id.* (citation omitted). We review the superior court's legal conclusions and interpretation of a statute de novo. *In re Estate of Travers*, 192 Ariz. 333, 334, ¶ 11 (App. 1998); *Fremont Indem. Co. v. Indus. Comm'n*, 182 Ariz. 405, 408 (App. 1995).

## I.        Due Process

¶7        Mother contends the superior court denied her due process by depriving her of a meaningful opportunity to present her case. To support her due process challenge, Mother first points to the time limitations imposed by the court; next, to the court requiring her to use an interpreter at all times; then, to the court failing to sanction Father for his failure to timely produce income-related documentation. Noting that "justice must satisfy the appearance of justice," *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 13 (1954)), Mother also contends the court failed to conduct itself as a fair tribunal.

¶8        To satisfy due process, the superior court "must afford the parties 'an opportunity to be heard at a meaningful time and in a meaningful manner'" before modifying child support. *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation omitted); *see also Heidbreder v.*

*Heidbreder*, 230 Ariz. 377, 381, ¶ 14 (App. 2012) ("A trial court errs if it modifies child support without . . . allowing the parties to gather and present their evidence."); U.S. Const. amend. XIV, § 1; Ariz. Const. art. 2, § 4. We review alleged violations of due process de novo. *Wassef v. Ariz. State Bd. of Dental Exam'rs*, 242 Ariz. 90, 93, ¶ 11 (App. 2017).

### A.      Time Limitations at Trial

**¶9**        Mother argues the superior court denied her due process by imposing time limitations that deprived her of a meaningful opportunity to present her case. The superior court has broad discretion to manage its docket and we generally will not substitute our judgment regarding its day-to-day management of cases. *Findlay v. Lewis*, 172 Ariz. 343, 346 (1992). This includes broad discretion to "impose reasonable time limits appropriate to the proceedings." Ariz. R. Fam. Law P. 22(a). If a party believes the time allotted by the superior court is insufficient, it may request additional time, *Id.*, but "[t]he determination of when additional time is necessary is normally committed to the discretion of the trial court." *Volk*, 235 Ariz. at 469, ¶ 22. However, if "it becomes apparent that the court lacks sufficient time to receive adequate testimony, then the court must allow reasonable additional time or continue the hearing to permit it to perform its essential tasks." *Id.* at 468, ¶ 21.

**¶10**        Before trial, the superior court informed the parties that each would have 45 minutes to present its case. The court had also informed the parties they could petition for more time if needed. Mother neither objected to the time limits set by the court nor requested additional time. Because Mother raises this issue for the first time on appeal, we review it for fundamental error. *State v. Bible*, 175 Ariz. 549, 572 (1993); *see also Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶ 15 (App. 2012) (explaining the doctrine of fundamental error is appropriate in civil cases in "situations that may result in the denial of a constitutional right").

**¶11**        Fundamental error goes to the foundation of the case, takes away an essential right to one's defense, and precludes the possibility of a fair trial. *State v. Hunter*, 142 Ariz. 88, 90 (1984). Fundamental error "must be clear, egregious, and curable only via a new trial." *State v. Gendron*, 168 Ariz. 153, 155 (1991). We will not reverse the superior court for fundamental error "unless [our] analysis of the entire record permits [us] to set forth reasons clearly demonstrating that the case falls within our definition of fundamental error." *Id.*

¶12        Mother was responsible for ensuring the record contained all documents necessary for us to consider the issues she raised in her appeal. *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) (citing ARCAP 11). However, Mother provided only short excerpts from the hearing transcripts, and the remaining record on appeal is insufficient to allow adequate review for error. As such, we must presume that the missing transcripts support the superior court's decision, and we further conclude that the time Mother was provided was sufficient to present her case. *See In re Mustonen's Estate*, 130 Ariz. 283, 284 (App. 1981). Because we find no error in the record before us, we hold the court's time limitation did not violate Mother's due process rights.

### B.      Russian Interpreter

¶13        Mother argues the superior court denied her due process by requiring her to use a foreign language interpreter for the entire hearing, rather than on an as-needed basis. However, Mother fails to explain how she was in this fashion deprived of a meaningful opportunity to present her case. Because Mother did not object to the superior court's decision at the hearing and raises this issue, too, for the first time on appeal, she is entitled only to fundamental error review. *Bible*, 175 Ariz. at 572.

¶14        As discussed above, due process requires the superior court to allow a party appropriate time to present its case. *Volk*, 235 Ariz. at 468, ¶ 21. This includes time required for an interpreter to translate testimony. Because the record is incomplete, again we cannot meaningfully review the sufficiency of the time the court provided. We presume the missing record supports the court's decision and find no violation of Mother's due process. *Mustonen's Estate*, 130 Ariz. at 284.

¶15        Mother cites to no legal authority and we find none to support the proposition that an interpreter can be used only when a party affirmatively requests assistance. Under Arizona law, the court may appoint and summon interpreters when necessary. A.R.S. § 12-241. A party either requests the use of an interpreter or not. The interpreter translates everything if the party cannot understand the full proceedings in English without assistance. Allowing "as-needed" interpreter services would risk error in the proceedings. More importantly, the management of the court proceeding at issue is squarely within the discretion of the trial court, and absent some cogent explanation as to how Mother's rights were adversely affected, we defer to the court's management of interpreter services.

### C.    Rulings on Motions

**¶16**        Mother next argues the superior court denied her due process by failing to rule on a motion for sanctions and a motion to obtain copies of Father's tax returns directly from the Internal Revenue Service. Mother's arguments are without merit.

**¶17**        Under Arizona law, a motion that is not directly ruled on by the superior court is deemed denied by operation of law. *McElwain v. Schuckert*, 13 Ariz. App. 468, 470 (1970). Although timely resolution of pending motions is nearly always required, there may also be reasons for a court to defer resolution of a motion, including one seeking discovery compliance and/or sanctions. Simply stated, Mother was not entitled to an express ruling on her repetitive discovery and sanction motions and the court did not deny her due process by failing to provide an explicit pronouncement.

**¶18**        Additionally, the superior court ruled on Mother's motion for sanctions in its minute entry Under Advisement Ruling on the matter. The court agreed that Father failed to timely provide the requested tax documents. But, because the hearing was continued, Mother had adequate time to review the discovery and prepare for the hearing. The court then expressly denied Mother's motion for sanctions.

### D.    Evasive Conduct

**¶19**        Mother argues Father engaged in "evasive conduct" in discovery, which, "combined with . . . inaction by the trial judge[,] offends . . . notions of fairness and undermines the administration of justice" and deprived her of due process. At the same time, Mother notes that she "does not allege actual bias" on the part of the court. As far as we can discern, Mother's due process claim in this regard is based on the notion that not sanctioning Father for his conduct was fundamentally unfair and created an unfair tribunal, which deprived her of justice. Beyond these vague assertions, Mother has not demonstrated exactly how her rights were violated and provides no legal authority to support her argument.

**¶20**        The superior court has broad discretion over sanctions for disclosure and discovery issues. *Lenze v. Synthes, Ltd.*, 160 Ariz. 302, 305 (App. 1989). We review the court's decision concerning discovery violation sanctions for "a clear abuse of discretion." *Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009); *see also Lenze*, 160 Ariz. at 305 (explaining the court's sanctions for discovery violations are entitled to

deference on appeal). Based on this record, the court exercised its discretion in an appropriate manner.

## II.  Modification of Child Support

**¶21**       Next, Mother contends the court erred by relying on falsified financial documents and applying the wrong definition of gross receipts when determining Father's income. Guidelines § 5(C). Mother argues the superior court erred by attributing minimum wage to Father.

**¶22**       "We defer to the trial court with respect to any factual findings explicitly or implicitly made, affirming them so long as they are not clearly erroneous . . . ." *John C. Lincoln Hosp. & Health Corp. v. Maricopa County,* 208 Ariz. 532, 537, ¶ 10 (App. 2004). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Rev.,* 206 Ariz. 480, 482, ¶ 9 (App. 2003). Evidence is substantial if it permits "a reasonable person to reach the trial court's result." *Davis v. Zlatos,* 211 Ariz. 519, 524, ¶ 18 (App. 2005) (citation omitted). "[W]e cannot reweigh the evidence and substitute our own evaluation of it. Instead, we must uphold the trial court's determination unless we find it is without any evidence to support it or is absolutely contrary to the uncontradicted and unconflicting evidence on which it purports to rest." *Cauble v. Osselaer,* 150 Ariz. 256, 258 (App. 1986).

### A.  Financial Documents

**¶23**       Mother argues the documents submitted by Father were fabricated and self-serving, falsely reducing his income below minimum wage. Mother challenges Father's credibility and raises numerous questions about the authenticity and accuracy of the documents produced by Father. We recognize the unusual circumstances leading the superior court to attribute minimum wage to Father, a business owner with at least seven properties in Arizona. However, the court is in a better position to judge party credibility and we must defer to its findings unless there is no substantial evidence in the record to support them. *Cardoso v. Soldo,* 230 Ariz. 614, 619, ¶ 17 (App. 2012). Here, Father's tax returns and testimony related to his income support the court's decision. We therefore affirm.

### B.  Gross Income

**¶24**       Mother argues the superior court erred by relying on Father's tax returns rather than his business and rental income figures when determining his income. Guidelines § 5(C). Mother also argues the

court should not have used cash drawer reports from Father's business to determine his self-employment income without expressly determining what his gross receipts and ordinary and necessary expenses were.

¶25        We review the superior court's interpretation of the Guidelines de novo as a question of law. *Mead v. Holzmann*, 198 Ariz. 219, 220, ¶ 4 (App. 2000). When determining income from self-employment or rent for child support purposes, "gross income means gross receipts minus ordinary and necessary expenses required to produce income. Ordinary and necessary expenses do not include amounts determined by the court to be inappropriate for determining gross income for purposes of child support." Guidelines § 5(C). Section 5(C) allows the court to decide what income is gross income and what expenses are "ordinary and necessary."

¶26        The record indicates the superior court considered not only Father's tax documents and cash drawer reports from his business, but also his testimony related to the current state of his business and the income, maintenance, and taxes for his rental properties. According to the court, "Father testified that he can no longer compete with companies on the Internet," Father has gone from 20 employees to 2, and Father's tax returns "show that his business is barely staying afloat." The court found Father's "gross business income" in 2017 was $222,370 and his net profit only $2,070. The court also found Father's 2018 "gross business income" was $199,860 but that after expenses, his net profit was only $4,594. The court found Father's combined rental income was $1,890 per month but "[Father] testified that he makes very little money on his properties after paying the expenses (mortgage, taxes, maintenance, etc.)."

¶27        After noting Father's limited income, the superior court quoted the Guidelines Section 5(C), noting that "gross income is gross receipts minus the ordinary and necessary expenses to produce the income." In context, it is clear the court's use of "gross business income" refers to the Guidelines' "gross receipts." While the court did not state the expenses deducted from the gross receipts were ordinary and necessary for Father to produce income, it listed them as salaries, utilities, insurance, and real estate taxes. Accordingly, the court appropriately exercised its discretion in determining which of Father's expenses were ordinary and necessary, and we find no error.

### III.     Dance Class Reimbursement

**¶28**     Mother sought reimbursement for expenses she incurred paying for the child's dance instruction. However, Mother conceded that there was no court order requiring him to do so and no written agreement where Father assumed this responsibility. *See* Guidelines § 9(B)(2); Ariz. R. Fam. Law P. 69. We agree with the superior court, Father is not legally required to reimburse Mother for dance classes.

## CONCLUSION

**¶29**     We affirm the superior court's modification of child support.



AMY M. WOOD • Clerk of the Court
FILED:     AA